## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

DAVID DANIELS,

      Petitioner,

v.                                  Case No. 5:22-cv-119-MCR-MJF

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Petitioner David Daniels, proceeding with counsel, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Respondent ("the State") answered, providing relevant portions of the state court record. Doc. 9. Daniels replied. Doc. 11. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Daniels's petition should be denied because his claim is procedurally defaulted.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

## I.    BACKGROUND FACTS AND PROCEDURAL HISTORY[2]

On March 28, 2015, Daniels, armed with a semi-automatic handgun, opened fire into a crowded house-party in Panama City Beach, Florida. Daniels injured seven victims. One victim—a college sophomore and dancer—now is confined to a wheelchair. Another victim—also in his early 20's—lost his spleen and suffered a stomach injury that permanently affected how often and the quantity of food he can eat.

After the shooting, Daniels ran from the house and discarded his weapon—a chrome, .40 caliber Smith & Wesson semi-automatic pistol with black grips—in a neighboring yard. The police recovered the handgun and obtained a description of the shooter and his clothing. Law enforcement combed the area for someone matching that description and found Daniels, who fit the description of the assailant "almost to a T." Doc. 9, Ex. B at 275.[3] The police detained Daniels and walked him back to the scene where a victim identified him as the shooter.

---

[2] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. Doc. 9, Ex. B (Trial Tr.); *see also Jackson v. Virginia*, 443 U.S. 307 (1979).

[3] Hereafter, all citations to the state court record are to the electronically-filed exhibits attached to the State's answer, Doc. 9. Citations to page numbers of an exhibit are to the numbers of the original document. When a page bears more than one page number, the court cites the number located at the bottom center of the page.

Daniels was taken into custody and interviewed by police. The interview occurred approximately three hours after the shooting. Initially, Daniels said that he did not remember anything that happened that night. When asked if he shot anyone, Daniels answered: "I didn't shoot nobody." *Id*. However, after police informed Daniels that several witnesses saw him shoot seven people and that they recovered the gun, Daniels changed his story and admitted that he opened fire inside the house. Daniels claimed, though, that he fired in self-defense because someone shot at him first. Daniels recounted—in detail—the events of the evening, including his actions before, during and after the shooting. In response to questioning about alcohol and drug consumption, Daniels told police that he consumed alcohol at the party and "just hit the spice one time," but that he was not drunk or high at the party. Ex. B at 392, 394. Daniels described his firearm as a chrome, .40 caliber semi-automatic pistol with black grips.

A firearms expert later determined that all of the cartridge casings and projectiles recovered from the crime scene and the victims' bodies were fired from a single gun—the chrome, .40 caliber Smith & Wesson semi-automatic pistol with black grips that police recovered from the yard near the party.

In Bay County Circuit Court Case No. 2015-CF-1271, Daniels was charged with seven counts of Attempted Second-Degree Murder with a Firearm (Counts I-

VII), and one count of Shooting into an Occupied Building (Count VIII). Ex. A at 105-06 (Am. Information). While awaiting trial, Daniels made incriminating statements to a friend during a recorded phone call from the jail. Daniels stated that he was the shooter, he remembered the events of the evening, and he believed he could be prosecuted for only one count of attempted murder (instead of seven) due to double-jeopardy principles. Ex. B at 405-06.

At trial, none of the victims specifically identified Daniels as the shooter. Rather, the victims identified the shooter by describing his haircut (a "Boosie cut" or "Boosie fade") and his clothing—differing on the color of his shirt. Ex. B at 77-78, 105, 123, 151, 162, 174. The victims testified that the shooter was sitting on the couch when he started firing, and that when he finished firing, his friends told him, "Run, Boosie, run." *Id*. at 76-78, 105-13, 161-62, 185-86. The shooter's gun was a silver and black pistol. One victim, who did not see the shooter, identified Daniels in court as "Boosie," but did not recall seeing him at the party. *Id*. at 265-67. No fingerprint or DNA evidence was recovered from the pistol found in the yard.

Defense counsel argued that there was reasonable doubt about whether Daniels was the shooter. Counsel also argued that Daniels's various statements to the police were not voluntary or reliable because Daniels was intoxicated.

The jury found Daniels guilty of all counts as charged. Ex. A at 168-75. The trial court adjudicated Daniels guilty and sentenced him to imprisonment for life for each attempted murder (the mandatory minimum), and to 15 years of imprisonment for shooting into the building, with all sentences to run consecutively. Ex. A at 183-201 (J. & Sentence). On March 10, 2017, the Florida First District Court of Appeal ("First DCA") affirmed without written opinion. *Daniels v. State*, 224 So. 3d 211 (Fla. 1st DCA 2017) (Table) (per curiam) (copy at Ex. E). The mandate issued April 5, 2017. Ex. E.

On July 11, 2017, Daniels filed in the state circuit court a *pro se* motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a). Ex. H. The trial court denied the motion on November 14, 2017. Ex. I. Daniels did not appeal.

On June 25, 2018, Daniels filed in the state circuit court a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he twice amended. Ex. J at 946-72 (Mot.); *Id*. at 976-98 (Am. Mot.); *Id*. at 1010-45 (Second Am. Mot.). Daniels's second amended Rule 3.850 motion, filed on July 26, 2019, raised seven claims:

(1)    Newly discovered evidence (affidavit of Denzel Braggs) that Braggs spiked the punch at the party with peyote tea and phencyclidine "which caused several kids to lose their minds without any rational understanding of any kind for hours after drinking," Ex. J. at 1013-17;

(2)     Counsel was ineffective for informing Daniels "that the insanity Defense was not available for intent crimes such as Attempted Murder," *id*. at 1017-21;

(3)     Counsel was ineffective for failing to file a motion to suppress Daniels's statements to police "based on the police provisionally seeing that the Defendant was under the influence of involuntarily induced substances (illegal drugs) or excessive use," *id*. at 1021-24;

(4)     Newly discovered evidence (affidavit of Shane Kurucz) that Kurucz overheard a fellow partygoer nicknamed "Big Bo" tell Denzel Braggs that he ("Big Bo") "got sick off the punch" and "was almost blind and was hallucinating" after drinking the punch, *id*. at 1024-28;

(5)     Daniels's sentence was illegal, *id.* at 1028-29;

(6)     Counsel was ineffective for failing to object to the illegal sentence, *id*. at 1029-31; and

(7)     Counsel was ineffective for failing to file a "proper" motion for judgment of acquittal on the element of "depraved mind," *id*. at 1031-33.

On November 30, 2020, the state circuit court granted Daniels an evidentiary hearing on two of his claims (Grounds One and Four). *Id*. at 1094-97. On December 7, 2020, the state court appointed postconviction counsel to assist Daniels. *Id*. at 1098.

The postconviction hearing was held on March 19, 2021. *Id*. at 1289-97 (Hr'g. Tr.). Postconviction counsel advised the court—and the State agreed—that in Florida, the defense of involuntary intoxication is not available for general intent

crimes, including second-degree murder (and attempt). *Id.* at 1292-96 (discussing *Daniels v. State*, 313 So. 3d 247 (Fla. 1st DCA 2021) and *Wilson v. State*, 871 So. 2d 298, 301 (Fla. 1st DCA 2004)). The state circuit court entered a final order denying relief on all claims. Ex. J at 1123-1261.

On appeal, Daniels' *pro se* amended initial brief challenged the trial court's ruling on only one claim (Ground Seven). Ex. K. The First DCA affirmed without written opinion. *Daniels v. State*, 353 So. 3d 3 (Fla. 1st DCA Dec. 14, 2022) (Table) (per curiam).

## II.   DANIELS'S FEDERAL HABEAS PETITION

Daniels filed his counseled federal habeas petition on June 15, 2022. Doc. 1. Daniels raises one claim—a claim he knew about but did not pursue in state court:

> Mr. Daniels was deprived of his right to the effective assistance of counsel by his trial counsel's failure to advise him to testify on his own behalf and pursue the defense of involuntary intoxication resulting in insanity.

Doc. 1 at 6 & Attach. 2 at 4 (Mem.).

In support, Daniels alleges that he would have testified as follows: (1) when he arrived at the party he smoked Spice after being told it was marijuana; (2) the Spice caused him to hallucinate that a man was shooting at him; (3) Daniels fired his gun as a result of that hallucination; (4) Daniels ran from the party because friends told him to run; and (5) Daniels does not remember what happened immediately

Page 7 of 27

thereafter. Doc. 1, Attach. 1 at 17 (Statement of Facts); Attach. 2 at 7 (Mem.). Danial

maintains that "through their pre-trial discussions, defense counsel was aware that

Mr. Daniels would testify to the foregoing if called to do so." Doc. 1, Attach. 1 at

17.

Daniels admits that this claim is procedurally defaulted because he did not

present it to the state courts and now is procedurally barred from doing so. Doc. 1 at

7, Attach. 2 at 9. Daniels maintains that his procedural default is excused under

*Martinez v. Ryan*, 566 U.S. 1 (2012), because: (1) he was proceeding *pro se* when

he filed his Rule 3.850 motions; (2) counsel was appointed only to assist Daniels at

the evidentiary hearing; (3) postconviction counsel could not have added this claim

through amendment because the two-year time limit in Rule 3.850(b) had run by the

time counsel was appointed; and (4) this procedurally defaulted claim is substantial.

Doc. 1, Attach. 2 at 9-11 (Mem.); Doc. 11 at 2 (Reply). The State asserts that Daniels

has not overcome his procedural default and, therefore, federal habeas relief should

be denied. Doc. 9 at 8-29.

### III.    RELEVANT LEGAL STANDARDS

## A.    Federal Habeas Exhaustion Requirement and Procedural Default

"To respect our system of dual sovereignty, the availability of habeas relief is

narrowly circumscribed." *Shinn v. Ramirez*, 596 U.S. ___, 142 S. Ct. 1718, 1730

(2022) (citations omitted). One such constraint is the exhaustion requirement and corollary principle of procedural default. *See* 28 U.S.C. § 2254(b); *Shinn*, 142 S. Ct. at 1731-32.

Section 2254 "requires state prisoners to 'exhaust the remedies available in the courts of the State' before seeking federal habeas relief." *Shinn*, 142 S. Ct. at 1732 (alteration adopted) (quoting 28 U.S.C. § 2254(b)(1)(A)). "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim" to the state's highest court, either on direct appeal or on collateral review. *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

When a petitioner fails to exhaust his federal claim and the state court remedy no longer is available, that failure to exhaust is a procedural default. *Boerckel*, 526 U.S. at 839-40; *see also Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999) (when a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim now would be procedurally barred under state law, the claim is procedurally defaulted).

> Together, exhaustion and procedural default promote federal-state comity. Exhaustion affords States an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights, and procedural default protects against the significant harm to the States that results from the failure of federal courts to respect state procedural rules. Ultimately, it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without giving an opportunity to the state courts to correct a constitutional violation, and to do so consistent with their own procedures.

*Shinn*, 142 S. Ct. at 1732 (alteration adopted) (internal quotation marks and citations omitted). Thus, "only rarely may a federal habeas court hear a claim or consider evidence that a prisoner did not previously present to the state courts in compliance with state procedural rules." *Shinn*, 142 S. Ct. at 1730.

## B.     Standard for Excusing a Procedural Default

"[F]ederal courts may excuse procedural default only if a prisoner 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law.'" *Shinn*, 142 S. Ct. at 1732 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). To establish cause, "the prisoner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Shinn*, 142 S. Ct. at 1732 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). In *Coleman*, the Court stated that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk

of attorney error.'" *Coleman*, 501 U.S. at 753 (citation omitted). To demonstrate prejudice, "the prisoner must show not merely a substantial federal claim, . . . but rather that the constitutional violation worked to his *actual* and substantial disadvantage." *Shinn*, 142 S. Ct. at 1732 (internal quotation marks and citations omitted).

In *Martinez*, the Supreme Court adopted a "qualification" to *Coleman*'s rule concerning attorney error. 566 U.S. at 16. The Court held that: "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 566 U.S. at 17. A prisoner claiming that his postconviction counsel was ineffective must satisfy the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). *See Martinez*, 566 U.S. at 14.

Regarding the showing of a "substantial" claim, "the [petitioner] must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14. In *Hittson v. GDCP Warden*, 759 F.3d 1210 (11th Cir. 2014), the Eleventh Circuit defined "substantial" as follows:

> As the Court explained in *Miller–El*, "[a] petitioner satisfies this standard by demonstrating . . . that jurists could conclude the issues

Page 11 of 27

presented are adequate to deserve encouragement to proceed further." 537 U.S. at 327, 123 S. Ct. at 1034. Where a petitioner must make a "substantial showing" without the benefit of a merits determination by an earlier court, he must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L. Ed. 2d 542 (2000).

*Hittson*, 759 F.3d at 1269-70 (discussing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)).

In assessing cause and prejudice under *Martinez*, a federal habeas court cannot hold an evidentiary hearing—or otherwise consider evidence beyond the state-court record—unless the petitioner satisfies the narrow exceptions in 28 U.S.C. § 2254(e)(2). *Shinn*, 142 S. Ct. at 1739.[4]

## IV.    DISCUSSION

## A.    Daniels's Ineffective-Assistance-of-Trial-Counsel Claim

Daniels claims that trial counsel was ineffective for failing to call him to testify in support of an insanity-by-involuntary-intoxication defense. In support, Daniels maintains that he would have testified that prior to the incident, he was given what he was told was marijuana, a drug Daniels was familiar with and which caused

---

[4] Similarly, even if a petitioner's procedural default is excused under *Martinez*, a federal habeas court reviewing the merits of a defaulted ineffective-assistance-of-trial-counsel claim cannot conduct an evidentiary hearing or otherwise consider evidence outside the state-court record, unless the petitioner satisfies the narrow exceptions in § 2254(e)(2). *Shinn*, 142 S. Ct. at 1734.

him to relax. Doc. 1, Attach. 1 at 17. However, "after ingesting what he was told was marijuana, [Daniels] was told that it was actually 'spice' also known as 'K2' or synthetic marijuana, a drug Mr. Daniels had never experienced, and would not have ingested had he known, as it is well known synthetic marijuana is highly hallucinogenic, and can cause psychosis." *Id*. at 17. Daniels alleges that before trial, he "advised his trial counsel that after ingesting the synthetic marijuana he began having hallucinations" which "ultimately resulted in Mr. Daniels believing a man was shooting at him at the party which is the reason he began firing his gun during the party." *Id*. at 17. Daniels "then ran from the party as he was told to run from the party, and due to the synthetic marijuana, he did not fully comprehend what was happening." *Id*. at 17.

## B.   Daniels's Rule 3.850 Motions

In assessing Daniels's invocation of the *Martinez* exception, the following state-court procedural history is relevant. Daniels's original Rule 3.850 motion, filed *pro se* on June 25, 2018, raised seven claims. As relevant here, in Ground One of that motion Daniels claimed that trial counsel was ineffective for failing to consult with and hire "a Synthetic Marijuana/Spice/K2 expert to rebut the State's claim that the Defendant knowingly and willfully gave a statement to the police after his arrest." Ex. J at 948. In support, Daniels alleged that:

The expert would have concluded that the Defendant at the time of the crimes was in fact **hallucinating** and was not in his right state of mind and was suffering from the use [of] **Synthetic Marijuana/Spice/K2**, of which would have caused a severe case of **hallucinations**. Moreover, the Defendant would have not been aware of everything that was going on around him at the time of the shooting and would have stood frozen in place during the time the shooting occurred and that he simply ran when told to do so, in order to avoid being injured more than the injury to his left forearm. And had the Defendant not been suffering the effects of the Synthetic Marijuana/Spice/K2, he would have fled the scene of the crime from the onset just as everyone else did when the shooting first started and in doing so would have avoided being shot himself.

. . . .

The Defendant asserts that it is more than probable to believe that an expert would have testified to a medical certainty, at trial that the Defendant after using this euphoric synthetic drug (even one time), would suffer from the loss of memory, experience hallucinations, saying things that were harmful to him, have bad psychotic experiences, and be faced with experiences of not being in his right state of mind, any of which would cause him to not understand that he needed to leave the home when the shooting occurred instead of standing up, and then falling back unto the couch when the shooting began and then on top of that being shot himself and not knowing that he needed to leave until someone yelled out, "Run Boosie Run!"

*Id*. at 949-50. Daniels maintained that the proposed expert testimony was "crucial" because "if the Defendant was under the influence of the new wave drug called Spice or K2 then it would have shown that the Defendant was not in his right state of mind and incapable of committing such crimes." *Id*. at 950.

Page 14 of 27

Also relevant here, Daniels claimed in Ground Two of his original Rule 3.850 motion that trial counsel was ineffective for advising Daniels that it was not necessary for him to testify concerning the incident (including his alleged unwitting smoking of Spice at the party). In support, Daniels alleged:

> I stayed outside to smoke a cigarette and I noticed while I was smoking a couple of people standing around and decided to holla at them to see what was up. It was this time one of the guys said you want to hit this, me think it was some weed took a couple of hits like I hit it twice), and after doing so I went back in to the party, as it had gotten closer to 12 midnight and the party was starting to liven up. I cannot remember who it was that told me to be careful because the stick I had just hit was spice or K-2, but I do know that the Spice/K-2 had an immediate effect on me, this was so because I was a first time user.

Ex. J at 953.

Daniels's amended Rule 3.850 motion, filed *pro se* on January 25, 2019, raised the same seven claims and supporting factual allegations. Ex. J at 976-98.

Daniels's second amended Rule 3.850 motion, filed *pro se* on July 26, 2019, raised the seven claims detailed above. *See* Procedural History, *supra*; *see also* Ex. J at 1010-45.

**C.    Daniels Fails to Establish "Cause" for His Procedural Default**

Daniels argues that he falls within the *Martinez* exception, because he was *pro se* at the time he filed his Rule 3.850 motions, and postconviction counsel's appointment was limited to assisting Daniels at the evidentiary hearing. Doc. 11 at

2. Daniels alternatively argues that even if postconviction counsel *could have* sought leave to amend to add Daniels's present ineffective-assistance claim, the claim would have been dismissed as time-barred. *Id.* at 2. Daniels explains that his conviction became final under Florida law on April 5, 2017, and that the two-year time limit to file a Rule 3.850 motion expired on April 5, 2019. *Id.* at 2.[5]

Daniels's arguments fail for several reasons. First, there is no dispute that postconviction counsel was appointed *three months prior* to the evidentiary hearing. Rule 3.850 authorizes the appointment of counsel. *See* Fla. R. Crim. P. 3.850(7). Neither the Rule, nor the state court's order appointing counsel in Daniels's case, prohibited counsel from amending (or seeking leave to amend) Daniels's *pro se* motion.

Second, Daniels's assertion that seeking leave to amend would have been futile because his ineffective-assistance claim would have been deemed untimely, is not supported by Florida law. Rule 3.850 provides:

> A motion may . . . be amended at any time prior to either the entry of an order disposing of the motion or the entry of an order pursuant to subdivision (f)(5) or directing that an answer to the motion be filed pursuant to (f)(6), whichever occurs first. Leave of court is required for the filing of an amendment after the entry of an order pursuant to

---

[5] Daniels does not assert that his postconviction counsel was ineffective. His *Martinez* argument is based exclusively on the fact that counsel was not appointed until December 7, 2020, and that the scope of his representation was limited. *See* Docs. 1, 11.

> subdivision (f)(5) or (f)(6). Notwithstanding the timeliness of an
> amendment, the court need not consider new factual assertions
> contained in an amendment unless the amendment is under oath. New
> claims for relief contained in an amendment need not be considered by
> the court unless the amendment is filed within the time frame specified
> in subdivision (b).

Fla. R. Crim. P. 3.850(e).

Here, the state court's order directing the State to file an answer to Daniels's second amended Rule 3.850 motion was entered on March 13, 2020. Ex. J at 1046-48. Thus, Daniels would have required leave of court to file a third amended Rule 3.850 motion.

"An amended rule 3.850 motion filed before the circuit court has ruled, which merely enlarges or expands on issues raised in a timely-filed original rule 3.850 motion, should not be dismissed as untimely." *Cooper v. State*, 126 So. 3d 439, 440 (Fla. 3d DCA 2013); *Snodgrass v. State*, 278 So. 3d 890, 892-93 (Fla. 1st DCA 2019) ("[I]f an amended rule 3.850 motion is filed outside of the pertinent two-year time period, a court may consider such a motion if it 'enlarges some of the grounds for relief from the previously filed pleadings.'" (quoting *Boyington v. State*, 172 So. 3d 1023, 1024 (Fla. 1st DCA 2015))); *Surinach v. State*, 110 So. 3d 95, 95 (Fla. 2d DCA 2013) ("Amended motions for postconviction relief are subject to the two-year time limit for filing rule 3.850 motions *unless they merely enlarge an issue or issues raised in the original motion*." (emphasis added) (citation omitted)); *Rincon v. State*,

Page 17 of 27

996 So. 2d 922, 923 (Fla. 4th DCA 2008) ("[T]he trial court could not consider the untimely . . . amended motion pursuant to rule 3.850[,] . . . *except to the extent any grounds of the amended motion constituted mere enlargement of a timely filed claim*." (emphasis added) (citation omitted)).

Daniels's present ineffective-assistance claim merely enlarged the ineffective-assistance claims raised as Grounds One and Two of Daniels's timely original and first amended Rule 3.850 motions—grounds which the state court ruled were facially insufficient. As outlined above, those previous two grounds claimed that trial counsel was ineffective for failing to hire an expert to testify to the hallucinogenic effects of Spice, and for misadvising Daniels that he did not need to testify to his version of the incident, including his unwitting smoking of Spice and its effect on him.

Additionally, Daniels ignores the fact that his second amended Rule 3.850 *filed on July 26, 2019*, raised at least three *new claims* (Grounds 5-7), yet the trial court addressed them on the merits. This contradicts Daniels's position that his present ineffective-assistance claim would have been dismissed as time-barred (when three *new claims* filed outside Rule 3.850(b)'s two-year limitations period were no)t.

Daniels, therefore, has not shown that he was precluded by Rule 3.850(b) from amending his Rule 3.850 motion—after counsel was appointed—to include his present allegations of ineffective assistance of counsel. *Compare Lanier v. State*, 826 So. 2d 460, 461-62 (Fla. 1st DCA 2002) (trial court erred in ruling that defendant's motion to amend his motion for postconviction relief was procedurally barred as untimely; defendant's original motion claimed that defense counsel was ineffective for failing to investigate a defense of "subjective entrapment," and grounds I and II of proposed amended motion alleged that counsel knew there were witnesses whose testimony could show police misconduct which induced defendant to commit the crime), *and Rogers v. State*, 782 So. 2d 373, 376 n.7 (Fla. 2001) (*Brady* claim raised in amended Rule 3.850 motion was not time-barred; amended claim "simply expanded" *Brady* claim raised in original Rule 3.850 motion, and "both motions advanced the same factual allegations"); *with Watson v. State*, 247 So. 3d 685, 686-87 (Fla. 1st DCA 2018) (claim raised in amended Rule 3.850 motion—that counsel was ineffective for falsely promising to get charges dropped after a successful appeal—was untimely because it did not merely enlarge grounds raised in original, timely motion; original motion claimed that counsel was ineffective for (1) failing to argue that victim's testimony did not support the element of fear of imminent violence, (2) failing to object or seek suppression of ammunition found during search

of defendant's home, (3) failing to negotiate a plea deal, and (4) failing to impeach a witness with prior inconsistent statements), *and Richardson v. State*, 890 So. 2d 1197, 1198 (Fla. 5th DCA 2005) (trial court did not err in summarily denying request to amend where defendant sought to assert "a new substantive ground for relief").

For all of the foregoing reasons, Daniels has not shown that his lack of counsel until December 7, 2020, establishes "cause" under *Martinez* to excuse his procedural default.

**D.    Daniels's   Ineffective-Assistance-of-Trial-Counsel   Claim   Is   Not "Substantial"**

Daniels also fails to establish that his ineffective-assistance claim is "substantial." Even taking Daniels's allegations concerning his proposed testimony as true, they would not warrant a finding of *Strickland* prejudice. In other words, Daniels's allegations would not allow a court to find "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The standard for Florida's insanity-by-involuntary-intoxication defense was articulated by the state postconviction when it denied relief on Daniels's newly-discovered-evidence claim based on Daniels's alleged unwitting consumption of punch laced with peyote tea and Phencyclidine ("Ground One" of Daniels's second amended Rule 3.850 motion). The state court explained:

Page 20 of 27

As discussed at the hearing held on March 19, 2021, involuntary intoxication negating specific intent is not a defense to the general intent crime with which Defendant was charged, attempted second-degree murder. See Wilson v. State, 871 So. 2d 298, 301 (Fla. 1st DCA 2004). However, this Court also recognizes that involuntary intoxication resulting in insanity is a defense to the crime charged. Compare Fla. Std. Jury Instr. (Crim.) 3.6(e)(2) with Fla. Std. Jury Instr. (Crim.) 3.6(e)(l). After reviewing Defendant's motion, this particular variation of involuntary intoxication appears to be the defense to which Defendant refers. To prove such a defense, Defendant would need to establish that

    1)    Defendant, without any fault on his part, unknowingly ingested an intoxicating liquor, drug, or other substance.

    2)    As a result of consuming an intoxicating liquor, drug, or other substance:

        a.    Defendant did not know what he was doing or its consequences or

        b.    Defendant knew what he was doing and its consequences, but did not know it was wrong.

Fla. Std. Jury Instr. (Crim.) 3.6(e)(2). The second prong of this defense is almost identical to the insanity defense. See Fla. Std. Jury Instr. (Criminal) 3.6(a); see also Reynolds v. State, 837 So. 2d 1044, 1048 (Fla. 4th DCA 2002) ("Under M'Naughton, an accused is not criminally responsible for his actions if, at the time of the offense, the defendant, by reason of a mental disease or defect, (1) does not know of the nature or consequences of his act; or (2) is unable to distinguish right from wrong."). Such a defense needs to be proven by clear and convincing evidence, meaning that the evidence is "precise, explicit, lacking in confusion, and of such weight that it produces a firm belief, without hesitation, about the matter in issue." See Fla. Std. Jury Instr. (Crim.) 3.6(e)(2).

Ex. J at 1126.

Assuming that Daniels would have testified as he now alleges, a court could not conclude that it was substantially likely the jury would have found the insanity-by-involuntary-intoxication standard satisfied. Daniels's statements to police—three hours after the shooting—indicated that he knowingly ingested Spice. The police asked: "Did you smoke any marijuana or smoke anything?" Ex. B at 392. Daniels answered, "I just hit the spice one time." *Id*. Daniels did not so much as hint that he was surprised it was Spice.

Daniels also confirmed that he was not intoxicated from the hit of Spice. When the police asked Daniels if he was "high" at the party, Daniels stated unequivocally: "I wasn't high." *Id*. at 394.

Moreover, Daniels's conduct after the shooting, his attempts to mislead law enforcement, and his clear and detailed description of the incident, all show that he fully comprehended what he was doing, its consequences, and that it was wrong. After shooting inside the house, Daniels fled the scene and discarded his gun in a neighboring yard, indicating a consciousness of guilt. Ex. B at 80, 105-06, 122-24, 185-86, 286-89, 301-03.

At the beginning of his interview with police, Daniels initially said that he did not remember anything that happened that night. *Id*. at 393. When asked if he shot

anyone, Daniels denied it: "I didn't shoot nobody." *Id*. This, too, indicates a consciousness of guilt.

When the police told Daniels that several witnesses saw him shoot seven people; that officers recovered his gun near the scene; and that they were "just trying to figure out why" Daniels shot them, *id*. at 393, Daniels recounted with clarity and detail the events of the evening, including his actions before, during and after the shooting. *Id*. at 394-98. Daniels admitted that he opened fire inside the house, but claimed it was "self defense" because someone shot at him first. *Id*. at 394-98. Daniels described his own gun as a chrome, 40 caliber semi-automatic pistol with black grips. *Id*. at 397-98. Daniels did not know at that time that the ballistics evidence and eyewitness accounts would contradict his story that someone shot at him first.[6] Daniels's proposed testimony would have been his *fourth* version of the incident, from: (1) not remembering, to (2) remembering but denying shooting anyone, to (3) admitting shooting but claiming self-defense, to (4) claiming the other shooter was a hallucination.

---

[6] During trial, defense counsel urged the jury to find that Daniels's statements to police were not voluntary or reliable due to his intoxication from alcohol and drugs. Ex. B at 478-79. The jurors watched the videotape of Daniels's interview with police and clearly were not persuaded by counsel's argument.

What's more, after Daniels was charged, he phoned a friend from jail and described his double-jeopardy theory—that he could not be prosecuted for seven attempted murders because they arose from a single criminal episode. *Id*. at 405-06. Daniels explained: "it wasn't no boom, then wait five minutes and boom, boom, it was it was boom, boom, boom, boom, boom, boom, boom. (Inaudible) like I ain't pause or nothing during, during the act, like the person ain't paused or nothing during the act." *Id*. at 406.

In light of this substantial evidence that Daniels (1) was not involuntarily intoxicated, (2) knew what he was doing and the consequences of his actions, and (3) knew that what he did was wrong, there is no reasonable probability that—had Daniels testified in support of an insanity-by-involuntary-intoxication defense—he would have been acquitted. Daniels's ineffective-assistance claim is not "substantial" for purposes of *Martinez*. *See, e.g., Hittson*, 759 F.3d at 1271 (habeas petitioner's procedurally defaulted ineffective-assistance-of-trial-counsel claim was not "substantial" because the petitioner failed to allege facts to warrant a finding of *Strickland* prejudice).

For all of the reasons discussed above, Daniels has not made the required showings to excuse his procedural default. Daniels's procedural default bars federal habeas review of his ineffective-assistance-of-trial-counsel claim.

## V.    A CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason

Page 25 of 27

would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VI.   CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.    The petition for writ of habeas corpus, Doc. 1, challenging Petitioner's judgment and sentence in *State of Florida v. David Jamichael Daniels, a/k/a "Boosie,"* Bay County Circuit Court Case No. 2015-CF-1271, be **DENIED**.

2.    The District Court **DENY** a certificate of appealability.

3.    The clerk of court close this case file.

At Pensacola, Florida, this 27th day of February, 2023.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**